371 A.2d 1366

**COMMONWEALTH of Pennsylvania**

v.

**Roberto FLORES, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 9, 1976.
Decided March 31, 1977.

142

Richard P. Hunter, Jr., Philadelphia, for appellant.

John M. DiDonato, Assistant District Attorney, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

CERCONE, Judge:

This is an appeal from appellant's judgment of sentence, for robbery and various weapons offenses, to a term of imprisonment of not less than five years nor more than ten years in a state correctional institution.

The Commonwealth's evidence established that in the early evening of February 6, 1974 appellant and a co-defendant robbed P. & J. Enterprises in Philadelphia. The owner, Patrick Jurado, and an associate present at the time of the robbery, Edgar Hildalgo, gave the police a complete description of the two men. On February 8, 1974, Lt. Benson of the Philadelphia Police Department returned to P. & J. Enterprises and displayed six photographs to the victim and his associate. They identified appellant and a criminal complaint was issued on the same day with appellant being arrested five days later. Appellant's motion to suppress was heard and later denied. On December 9, 1974, appellant's motion to dismiss pursuant to Pa.R.Crim.P. 1100 was denied. Trial commenced on December 13, 1974, and a jury returned a verdict of guilty on all counts. Post-trial motions were filed and denied by the trial judge and appellant was sentenced.

Appellant first contends that the testimony of both Lt. Benson and Mr. Jurado referring to appellant's identification from photographs in the possession of the police improp-

erly introduced evidence of appellant's prior criminal activity.

■ In *Commonwealth v. Allen,* 448 Pa. 177, 181, 292 A.2d 373, 375 (1972), our Supreme Court articulated the standard which governs a review of testimony related to a photographic display:

> "The suggestion that any reference to a defendant's photograph is so prejudicial that an inflexible rule of reversal must apply is explicitly rejected. We hold that after the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference . . . ."

Thus, the seminal question when there has been a reference to photos is whether or not a juror could reasonably infer that the accused had engaged in prior criminal activity. See also *Commonwealth v. Groce,* 452 Pa. 15, 303 A.2d 917 (1973).

■ In the instant case, the first reference to photographs was elicited by appellant on cross-examination of the complaining witness. Counsel for the co-defendant of appellant also elicited the fact that the witness had identified appellant's picture from a group of photographs. Lt. Benson then briefly mentioned the photos on direct examination and appellant objected. Putting all three references together, it is possible that a juror could reasonably infer prior criminal activity on the part of appellant. However, in light of the fact that appellant initially questioned the complainant concerning the photographic display and that appellant did not object to co-defendant's counsel's question concerning the identification of appellant, we conclude that appellant is not in a position to object at this time, because any error committed through the initial questioning was waived by appellant. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). Thus, the subsequent reference to the photos by

Lt. Benson was harmless. *Commonwealth v. Padgett,* 428 Pa. 229, 237 A.2d 209 (1968).

Appellant next contends that the lower court committed reversible error in ruling that appellant's prior burglary conviction could be used to impeach him if he took the stand, asserting that this erroneous ruling prevented appellant from testifying and, thus, denied him a fair trial. In *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973) our Supreme Court adopted the approach of *Luck v. United States,* 121 U.S.App.D.C. 151, 348 F.2d 763 (1965) and established that a balancing test is to be used in determining when prior convictions could be used to impeach a defendant's credibility and that this test was within the exercise of judicial discretion. The *Luck* court stressed this proposition when it stated, "[t]he matter is, we reiterate, one for the exercise of discretion; and, as is generally in accord with sound judicial administration, that discretion is to be accorded a respect appropriately reflective of the inescapable remoteness of appellate review." 348 F.2d at 769. However, neither *Luck* nor *Bighum* grant the trial court absolute discretion in determining when prior convictions can be used to impeach a defendant's credibility, but rather the trial court's exercise of discretion is reviewable by an appellate court within certain considerations. Some of the considerations noted in *Bighum* include the age and nature of the prior crimes, the length of the criminal record and the age and circumstances of the defendant. 452 Pa. at 567, 307 A.2d at 263. Probably the most important consideration or, as the *Bighum* court said, the factor "of critical importance" is "the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction." 452 Pa. at 567, 307 A.2d at 263. See also *Luck v. United States,* 348 F.2d at 769. In the instant case appellant was an adult offender who had recently pleaded guilty to a crime of a type generally admissible for impeachment,[1] and appellant

1. Appellant pleaded guilty to a charge of burglary on April 2, 1974, just nine months prior to the trial of this case. In *Commonwealth v.*

had four alibi witnesses who were called, thus presenting his version of the facts to the jury. Therefore, we hold that the lower court's exercise of its discretion was proper and we find this assignment of error to be without merit.

 ■■   Third, appellant argues that the lower court erred in limiting his right to cross-examine the complainant as to: a) prior inconsistent statements; b) complainant's prior record; and c) complainant's insurance coverage. Initially, it should be noted that although cross-examination is a matter of right, the bounds of proper cross-examination are within the sound discretion of the trial judge. *Commonwealth v. Bailey,* 450 Pa. 201, 299 A.2d 298 (1973); *Commonwealth v. Butler,* 232 Pa.Super. 283, 331 A.2d 678 (1974). At trial, the complainant testified that he was shown photographs twice, while at the suppression hearing he had testified that he had been shown photographs only once. The lower court made the following ruling with regard to appellant's cross-examination of the complainant:

> "You may interrogate him as to whether he saw any photographs on another occasion. You may confront him with the fact that he testified previously whatever it was that he did testify to, but you are to abstain from any questions pertaining to what kind of photographs were shown, whether they were at that point identified in any fashion. . . . As to the contradiction of testimony, you have every right to interrogate him and confront him."

Thus, the restriction imposed by the court was designed to prevent appellant's counsel from eliciting testimony about the identification itself. Since this was a joint trial the court was obviously correct in its caution because, although the photographic identification of appellant was not suppressed, the photographic identification of appellant's co-defendant had been ordered suppressed. Thus, the trial judge

*Kahley,* 467 Pa. 272, 356 A.2d 745 (1976) our Supreme Court noted that the Commonwealth has "the right to impeach where the prior conviction involved a crime of dishonesty or false statement. This would unquestionably embrace convictions for burglary and larceny." 467 Pa. at 288, 356 A.2d at 753.

was avoiding the danger that the complainant would explain that he identified the co-defendant at the suppressed photographic identification. Cross-examination was otherwise complete. Therefore, the record indicates that the trial court was correct in its limitation, and we find this assignment of error to be without merit.

■ As to the complaining witness' prior criminal record, a review of the record in this case indicates that on cross-examination the complainant testified to pleading guilty to a federal charge. The record indicates that the following exchange took place within the hearing of the jury.

"Q. [Counsel for appellant] Have you ever been convicted of a crime, Mr. Jurado?

A. [The complainant] Well, I have been convicted of acknowledging false documents, yes.

Q. Where is that at? In the Federal Court?

A. Federal Court . . .

Q. What was that concerning?

A. It was concerning some statements that some clients had made in my office, and which later turned out to be false, and I was indicted in the Federal Court concerning that particular—those particular statements, and in Federal Court I chose to plead guilty to the charge, and I was charged with acknowledging false documents.

Q. Why did you plead guilty? Were you guilty?

A. I chose not to fight the case, because it was rather circumstantial, and it is personal. . . .

THE COURT: May we have a date of that particular matter? What was the date? . . .

[Counsel for appellant]: It was September the 11th, 1974, before Judge Fullem.

THE COURT: Thank you. That is sufficient. . . ."

The lower court then sustained objections to the questions:

"Were you guilty?"

"Did you plead to receiving $800 for falsifying marriage certificates to smuggle people into the country?"

"Did you receive any money for falsifying those documents?"

Once again we find that the lower court did not abuse its discretion. In general, such impeaching evidence is limited to the fact of conviction, and it is not permissible to show the details and incidents of the crime beyond the name of the crime and the time and place of conviction. *United States v. Mitchell*, 427 F.2d 644 (3d Cir. 1970). In its opinion, the lower court noted that this limitation on cross-examination was imposed to "avoid a prolonged foray into a collateral matter." We agree with the lower court that the details sought by appellant were collateral, and not necessary to the impeachment process. The name of the crime and the time and place of conviction were sufficient for this purpose, so we find no abuse of discretion by the lower court.

Appellant also contends that the lower court erred in limiting appellant's right to cross-examine complainant as to his insurance coverage. Appellant contends that, had this line of questioning been allowed, the jury could have found that the alleged incident was an insurance fraud rather than a robbery. The insurance coverage issue would only be relevant if the defense were asserting insurance fraud, and nowhere in the record does appellant offer any evidence to support such an allegation. Secondly, the jury did hear that complainant had insurance coverage. Thirdly, when the lower court sustained the Commonwealth's objection, appellant could have explained that one of his theories of defense was insurance fraud and, thus, demonstrate to the lower court the relevance of this line of questioning at the time of the ruling, but he did not. Therefore, we find that no prejudicial error was committed in the instant case, in view of the overwhelming evidence supporting the conviction and the unsupported and speculative nature of any insurance fraud theory.

Finally, appellant maintains that his right to a speedy trial under Pa.R.Crim.P. 1100 was violated and, therefore,

that he should be discharged.[2]  Although we disagree with the computation of time set forth by both the lower court and the Commonwealth, we nevertheless hold that appellant's trial commenced within the period mandated by Rule 1100.

Rule 1100 of the Pennsylvania Rules of Criminal Procedure, which was promulgated in response to our Supreme Court's opinion in *Commonwealth. v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972), requires a trial to commence within 270 days in actions brought between June 30, 1973 and June 30, 1974.[3]

In the instant case, trial was commenced on December 13, 1974, which was thirty-eight days beyond the 270-day period generally mandated by Rule 1100 and, as our Supreme Court recently held in *Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976), this delay "must be either excluded from the computation of the period, Pa.R.Crim.P. 1100(d), or justified by an order granting an extension pursuant to the terms of the rule, Pa.R.Crim.P. 1100(c), if the Commonwealth is to prevail."  469 Pa. at 14, 364 A.2d at 697.  Since the Commonwealth does not argue that they should have been granted an extension,[4] the 38-day delay beyond the 270-day period must be excluded under subsection (d) of Rule 1100 in order for the Commonwealth to prevail.  Rule 1100(d) provides:

**2.**  Pa.R.Crim.P. 1100(f) provides, in pertinent part, that: "At any time before trial, the defendant or his attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this Rule has been violated.  .  .  ."

**3.**  Pa.R.Crim.P. 1100(a)(1) provides that:
"Trial in a court case in which a written complaint is filed against the defendant after June 30, 1973 but before July 1, 1974 shall commence no later than two hundred seventy (270) days from the date on which the complaint is filed."

**4.**  In its brief to this court the Commonwealth noted that "[i]t is interesting to note that the docket indicates the Commonwealth filed a Petition for Extension of Time pursuant to Rule 1100(c)."  However, the motion does not have a date received stamped thereon, no action was ever taken on the motion, and the Commonwealth has chosen instead to rely on its arguments under Pa.R.Crim.P. 1100(d).

"In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

(1) the unavailability of the defendant or his attorney;
(2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded."

The record discloses the following facts. On September 4, 1974, appellant's counsel was on trial before another judge and therefore, could not appear on behalf of appellant. At counsel's request the case was continued until September 25th. At that time, appellant's counsel requested a continuance for personal reasons, and the case was continued to October 28th. On October 23rd, however, another continuance, until November 6th was granted. Although the history recited by the lower court labels that last continuance the result of a request by counsel for the co-defendant, the transcript of the hearing on appellant's motion to dismiss supports the Commonwealth's position that the October 23rd continuance was requested by appellant's counsel.[5] Therefore, the record indicates that the delay of 63 days between September 4, 1974 and November 6, 1974 was a result of either the unavailability of appellant's counsel or continuances granted to appellant. Pa.R.Crim.P. 1100(d)(2) provides that the first 30 days are not to be excluded from determining the period for commencement of trial. Thus 33

**5.** "[Counsel for appellant]: . . . By the way, what I could find in my file is, number one, on September 25th for personal reasons—I have about 36 days of my responsibility. Under Rule 1100, 30 days of that 36 cannot be held chargeable to my client.
"The Court: Did you make two requests for continuances?
"[Counsel for appellant]: Yes, sir. I made two requests on my file. September 25th—
"The Court: That was continued to what date?
"[Counsel for appellant]: October 23rd.
"The Court: Then you made another request?
"[Counsel for appellant]: Yes, sir. Continued till November 6, I believe. . . .
"[Counsel for the co-defendant]: Judge, according to our records, we have never asked for a continuance in the case. . . ."

days are automatically excluded, by Rule 1100(d), from the computation of the 270-day period.

As noted above, trial was commenced 38 days beyond the 270-day period mandated by Rule 1100. This figure was derived by taking the total number of days between the date the complaint was filed, February 8, 1974, and the date trial commenced, December 13, 1974, and subtracting therefrom the 270-day period. However, both appellant and the Commonwealth treat February 13, 1974, *the date of arrest*, rather than February 8, 1974, *the date the complaint was filed*, as the first day of the 270-day period. As previously noted, the 270-day period can be extended if any delay results from the unavailability of the accused. Pa.R.Crim.P. 1100(d)(1). Further, the police's inability to find an accused can amount to unavailability. The Comment to Rule 1100 provides in pertinent part, that:

"For purposes of subparagraph (d)(1), in addition to any other circumstances precluding the availability of the defendant or his attorney, the defendant should be deemed unavailable for any period of time during which he could not be apprehended because his whereabouts were unknown and could not be determined by due diligence."

Thus, it is clear that upon a showing of due diligence the Commonwealth could automatically exclude the five-day period between the filing of the complaint and the arrest because of defendant's unavailability so that appellant would have been tried within the mandated time period. While the record reveals no attempt by the Commonwealth to make a showing of due diligence, appellant has admitted his own unavailability by not raising the question at the hearing on his motion to dismiss under Rule 1100. Cf. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).[6]

**6.** We feel obligated, in light of our concern for the effective administration of Rule 1100, and in order to logically explain our holding on this issue to raise and deal with this argument in our opinion. In fact, however, appellant at no time raised this argument. He did not raise it at post-trial motions or in his argument to this court.

Had appellant not conceded that the operative time for the purposes of Rule 1100 was the date of his arrest, and not the date of the filing of the complaint, the Commonwealth may have proved that appellant was indeed unavailable in that "his whereabouts were unknown and could not be determined by due diligence.  .  .  ."  Since appellant has conceded for the purpose of this argument that the five days between the filing of the complaint and appellant's arrest are not chargeable to the Commonwealth, we shall presume that, had the question been raised, the Commonwealth would have shown due diligence in seeking to apprehend appellant.[7]

■■■  It is held that 33 days of the 63-day period between September 4, 1974 and November 6, 1974 should be excluded from the computation of the 270-day period.  It is further held that the 5-day period between the filing of the complaint and appellant's arrest should also be excluded from the computation of the 270-day period due to the presumed unavailability of appellant.  Therefore, trial commenced on the 270th day, within the permissible period of Pa.R.Crim.P. 1100(a)(1).

The judgment of sentence is, therefore, affirmed.

SPAETH, J., concurs in the result.

HOFFMAN, J., files a dissenting opinion in which PRICE, J., joins.

HOFFMAN, Judge, dissenting:

This Court is once again faced with a problem arising under Rule 1100, Pa.R.Crim.P., 19 P.S.Appendix.  I believe

---

7.  It should also be noted that appellant's alibi witnesses testified that appellant returned to Philadelphia from New York on February 13, 1974, the date of the arrest.  Therefore, it is likely that appellant conceded the issue knowing that the Commonwealth could show his unavailability.

154

that the Commonwealth did not bring appellant to trial within the 270 day period, see Rule 1100(a)(1); therefore, I would reverse and order appellant discharged.

On February 6, 1974, the owner of P. & J. Enterprises, 4458 North Fifth Street, Philadelphia, was the victim of a robbery. The owner, Patrick Jurado, and his associate, Edgar Hidalgo, also on the scene at that time, gave the police a complete description of the two robbers. Two days later, Lt. Benson of the Philadelphia Police Department went to Jurado's establishment and displayed a photo array to the two witnesses, who identified appellant and his co-defendant. The record indicates that a criminal complaint was issued on February 8, 1974.

The police arrested the appellant on February 13, 1974. The record does not indicate why appellant was not arrested prior to that date. Apparently, there was some confusion concerning the subsequent court dates. During a December 9, 1974 hearing before Judge Bonavitacola, the parties reconstructed a procedural history from the Quarter Sessions files. Thereafter, the trial court developed the following chronology, which has been accepted by both the District Attorney and the appellant:

| Date | Event |
|------|-------|
| "2/6/74 | Date of Incident. |
| 2/13/74 | Arrest. |
| 2/22/74 | Prelim. Hearing. |
| 3/11/74 | Indictment. |
| 3/22/74 | Arraignment. |
| 4/22/74 | Motion to Suppress—held under advisement. S. Smith, J. Case Listed for trial 5/21/74 |
| 5/10/74 | Motion Denied |
| 5/21/74 | Both sides ready; assigned to trial 6/25/74; Latrone, J. |
| 6/25/74 | Com. witness not present. Returned for reassignment |
| 7/25/74 | Witness on vacation. Continued to 9/3/74. |
| 8/28/74 | Assigned for trial on 9/4/74: Bonavitacola, J. |
| 9/4/74 | Def. Attorney on trial. Continued to 9/30/74: Bonavitacola, J. |
| 9/25/74 | Def. Atty.. req. continuance for personal reasons. Cont. to 10/28/74: Bonavitacola, J. |
| 10/23/74 | Co-counsel not available (re Rivera). Cont. to 11/6/74: Bonavitacola, J. |
| 11/6/74 | Assigned to Room 296 to be heard by Judge assigned after completion of case now being tried: Bonavitacola, J. |
| 11/13/74 | Sent back to 625; Judge Porter will be in chambers next week. |
| 11/14/74 | Assigned to Room 426 for 11/18/74; both sides ready. |
| 12/4/74 | Returned to Room 625 for reassignment: Julian King, J. |
| 12/5/74 | For trial 12/9/74 |
| 12/9/74 | Motion to Dismiss Under Rule 1100, denied: Bonavitacola, J. |
| 12/13/74 | Jury selected and sworn—Takiff, J. |
| 12/17/74 | Motion to Suppress in Court identification denied: Takiff, J. |
| 12/18/74 | Demurrer. Overruled. |
| 12/20/74 | Verdict—guilty." |

The record contains a Copy of Docket Entries which is less complete than the lower court's procedural history but which includes one additional event worth noting:

"May 20, 1974—Commonwealth's Petition for an Extension of time under Rule 1100 of the Pa Rules of Criminal Procedure filed "[1]

As the cited history indicates, appellant filed a motion to dismiss which was denied on December 9, 1974, trial began on December 13, 1974, and a jury found appellant guilty of robbery on December 20, 1974. Appellant raised the Rule 1100 violation post-trial; relief was denied on May 16, 1975. At that time, appellant was sentenced to a term of imprisonment of five to ten years. This appeal followed.

Appellant contends that his right to a speedy trial under Rule 1100 was violated, and that, therefore, he should be discharged. Rule 1100(f) Pa.R.Crim.P. Appellant calculates the time period as follows: the period commenced on February 13, 1974, so that trial should have begun on November 10, 1974. He concedes that counsel requested two continuances, one on September 4, until September 25, and another on September 25, until October 28. The two continuances consumed 54 days. As stated by appellant, "[i]f all of the 54 days were chargeable to the appellant, his trial, as the lower court ruled, would have commenced in accordance with Rule 1100. However, the lower court completely ignored the mandate of 1100(d)(1) and (2) which in effect gives the appellant a thirty (30) day period which is not chargeable to him if he falls within the terms of this provision." Cf.

---

1. Appellant's brief states that the Commonwealth never filed a petition to extend. The motion does appear in the record but does not have the date received stamped thereon. No action was ever taken on the motion, the Commonwealth choosing instead to rely on its arguments under Rule 1100(f). The Commonwealth has not raised the issue at any stage of the proceeding. Further, failure by the lower court to decide a properly filed Rule 1100(c) petition until after trial constitutes a violation of the rule. *Commonwealth v. Ray*, 240 Pa.Super. 33, 360 A.2d 925 (filed April 22, 1976).

*Commonwealth v. Lewis*, 237 Pa.Super. 357, 352 A.2d 99 (1975).[2]

The Commonwealth argues that the 270th day after arrest was November 12, and that trial, therefore, began 31 days after the period ran. Therefore, unless the period was extended automatically by operation of Rule 1100(f), cf. *Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976); *Commonwealth v. Cutillo*, 235 Pa.Super. 131, 339 A.2d 123 (1975), the appellant is entitled to be discharged. The Commonwealth makes the following computation: "Appellant concedes that the twenty-two (22) days continuance from 9/4/74 to 9/25/74 can validly be charged against the defense . . . .. But appellant contends that the lower court erred in charging the twenty-nine (29) day continuance from 9/25 to 10/23/74 against the defense since it violated Rule 1100(d)(2) . . . .. Such a contention, standing alone, would have merit . . . .. But appellant overlooks the defense-requested continuance of 10/23/74 to 11/6/74, a period of fourteen (14) days. At the hearing for the Motion to Dismiss Indictments under Pa.R.Crim.P. 1100 before Judge Bonavitacola, defense counsel . . . admitted that he requested the continuance on 10/23/74 . . . .. Unfortunately, the Quarter Sessions file indicated that appellant's co-defendant requested the continuance and the lower court did not charge this period against appellant. Therefore, it is clear that appellant requested a twenty-nine (29) day continuance from 9/25/74 to 10/23/74 and a fourteen (14) day continuance from 10/23/74

**2.** Cf. *Commonwealth v. Lewis*, supra at 360, 352 A.2d at 101: "A preliminary hearing scheduled for July 22, 1974, was continued until August 19, 1974, at the request of appellant's attorney due to his being out of town. But, because the continuance was not in excess of 30 days, it is not excluded in determining the period for commencement of trial. See Rule 1100(d)(2)."

Rule 1100(d)(2) provides: "In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from: . . .

"(2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded."

to 11/6/74 for a total of forty-two (42) days. Under Rule 1100(d)(2) twelve (12) of these days can be excluded from the 'running of the Rule.' These twelve (12) days, coupled with the twenty-two (22) days appellant concedes are excluded from the period make it obvious that the November 12, 1974 date should be extended by thirty-four (34) days bringing the mandatory trial date to December 15, 1974. Appellant's trial commenced on December 13, 1974, clearly within the period . . . ." [3]

The transcript of the hearing on appellant's motion to dismiss supports the Commonwealth's position that on October 23, 1974 continuance was requested by appellant's counsel:

"[Counsel for appellant]: . . . By the way, what I could find in my file is, number one, on September 25th for personal reasons—I have about 36 days of my responsibility.

---

**3.** The case raises some serious questions which I need not resolve; at the same time, I note the issues because I do not endorse the Commonwealth's computations. First, at the hearing on the petition, the parties discussed an initial "continuance" granted because counsel was on trial in another matter. However, had counsel's appearance in another courtroom been mandated by court rules, see e. g., Rules 800–810, Philadelphia Court Rules (governing continuances and priorities if an attorney is scheduled to appear in more than one courtroom), he would have been "unavailable". See the Comment to Rule 1100, which indicates that unavailability relatés to the impossibility of the court proceeding against the accused. Obviously, whether counsel was "unavailable" or whether the case was continued will often produce a different result given the distinct methods of computing time under Rules 1100(d)(1) and 1100(d)(2). See also, *Commonwealth v. Coleman*, 241 Pa.Super. 450, 361 A.2d 870 (filed June 25, 1976). Second, the parties have assumed that if counsel were unavailable at that time, the entire 21 days was chargeable against the appellant. It does not appear in the record for how many of those 21 days appellant's attorney was unavailable. The rule provides that delay must *result* from counsel's unavailability. The Comment provides that only *that time during which* an accused is unavailable may be used to extend the period. If an accused is unavailable for, let us assume, 5 days because he is on-trial on another charge, but the court cannot reschedule the case for 20 days because of a lack of resources, it would appear that the accused could be charged with only 5 of those days. See *Commonwealth v. Shelton*, supra; cf. *Commonwealth v. Coleman*, supra, (holding that delay was not caused by appellant's request for a continuance, but resulted from scheduling practices then in effect).

Under Rule 1100, 30 days of that 36 cannot be held chargeable to my client.

"THE COURT: Did you make two requests for continuances:

"[Counsel for appellant]: Yes, sir. I made two requests on my file. September 25th—

"THE COURT: That was continued to what date?

"[Counsel for appellant]: October 23rd.

"THE COURT: Then you made another request?

"[Counsel for appellant]: Yes, sir. Continued till November 6, I believe . . . .

"[Counsel for the co-defendant]: Judge, according to our records, we have never asked for a continuance in the case . . . ."

Even if we assume that the Commonwealth is correct in all of its calculations, we should reverse appellant's conviction. Both the Commonwealth and the appellant have treated February 13, the date of the arrest, rather than the date on which the complaint was filed, as the first day of the 270 day period. Rule 1100(a)(1) is explicit that the date of the complaint customarily controls: "Trial in a court case in which a written complaint is filed against the defendant after June 30, 1973 but before July 1, 1974 shall commence no later than two hundred seventy (270) days from the date on which the complaint is filed." See also, *Commonwealth v. Silver*, 238 Pa.Super. 221, 357 A.2d 612 (1975). The period can be extended if any delay results from the unavailability of the accused. Rule 1100(d)(1). Further, the police's inability to find an accused can amount to unavailability. The Comment provides that "the defendant should be deemed unavailable for any period of time during which he could not be apprehended because his whereabouts were unknown and *could not be determined by due diligence* . . . ." (Emphasis added). My examination of the record, however, indicates that the Commonwealth failed to make a showing of due diligence. Thus, the period commenced on February 8, the date on which the complaint was issued, and trial

should have begun on November 5. Trial was commenced 38 days thereafter. Even assuming the period was extended by 34 days as the Commonwealth argues, Rule 1100 was nonetheless violated.

Therefore, judgment of sentence should be reversed and the appellant should be discharged.

PRICE, J., joins in this dissenting opinion.