378 A.2d 874

**COMMONWEALTH of Pennsylvania**

v.

**Edward Earl SAMPSON, Appellant.**

Superior Court of Pennsylvania.

Submitted March 14, 1977.

Decided Oct. 6, 1977.

9. Because of this disposition, we do not determine whether the evidence supported a finding of contempt.

158

Philip D. Freedman, Assistant Public Defender, Harrisburg, for appellant.

Marion E. MacIntyre, Second Assistant District Attorney, and LeRoy S. Zimmerman, District Attorney, Harrisburg, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant raises three allegations: (1) the Commonwealth violated Rule 1100 [1] when it brought him to trial 181 days after the issuance of the complaint; (2) the court erred in failing to direct a verdict of acquittal on a charge of corruption of a minor [2] because the minor was a prostitute; and (3) the court erred in permitting the Commonwealth to impeach appellant by introducing his record of prior convictions. We find that appellant is not entitled to discharge on the basis of Rule 1100(f) or on the basis of insufficient evidence on the charge of corruption. However, the lower court erred in allowing the Commonwealth to introduce appellant's criminal record and, therefore, we vacate the judgment of sentence and remand for a new trial.

The charges involved in the instant appeal arose out of a March 19, 1975 incident in Harrisburg. At trial, Daniel Boltz testified on behalf of the Commonwealth that on March 19, after an evening of drinking, he was approached by appellant who requested a ride. After riding several blocks, "we stopped the car and he called to several girls on the corner. I said, hi, I was going to drop him off, I wanted

1. Pa.R.Crim.P.; 19 P.S. Appendix.

2. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 3125.

to go.  He said—he called them over and one or two of the girls came over and looked in the car and said man, forget it, which was fine as I said, I was on the way home.  He said, well, do me a favor.  Drop me at Lester's which is back on Third Street."  Despite protests by Boltz at trial that he wanted to leave, Boltz waited at Lester's Cafe while appellant went into the bar and returned with Patricia Mancuso, a juvenile: "[Appellant] said, I'll drive, why don't you get in the back seat.  I said, I don't want to, I'm on my way home. He said, yes, take a ride so we took a ride and ended up in the area of HACC." [3]

Still unwilling to get involved, Boltz finally acquiesced:

"A.  Mr. Sampson said, hey look, I brought her along, why don't you two get together.  I said, no, I want to leave. So the conversation started concerning how much Miss Mancuso would work for and we argued back and forth and she never said anything that I can remember.  The conversation was made between Mr. Sampson and myself.  At this point I figured that the only way to get rid of both of them was to go along with Mr. Sampson.  We agreed to a price back in the area of HACC and while Miss Mancuso and I were in the long-wise situation in the back of the car I felt him reach into my pants pocket and I said, man, you don't have to do it, I already agreed and he said I don't know what you're talking about.  Well, I figured two against one and the condition I was in I was not going to argue.  So, I said fine. I told Miss Mancuso, just remember he owes you the money. So we got back up.  Then they both sat in the front of the car.  We drove back to the area of the Broad Street Market at which point they both got out.  When I pushed the seat forward to get out of the back I saw my wallet lying.  When I opened it up it was empty."

After Boltz realized that appellant had taken all of his money, he stopped a police car for assistance.  The police apprehended appellant whom they brought back to be identified by Boltz.

**3.**  Harrisburg Area Community College.

Ms. Mancuso, sixteen years old at the time of the offense, testified that she saw appellant on March 19, near Lester's Cafe: "I was walking over to the cafe and I saw him and he said to come—I told him I would wait for him. I went in the bar and came back out and he asked me what I was going to do. I told him I was going to try to get some money and so I walked back in the bar and he came in and we was talking and he was saying did I need a man and I told him I just broke up with one and then he must have gotten mad or something. He walked out and he asked what I was going to do. I told him I was trying to get some money. He said he already had someone out here for me to meet so we walked out." She also stated that the $25 fee was arranged between appellant and Boltz, and that she had nothing to say about it. After Boltz and the girl completed the act of intercourse, Boltz accused appellant of having taken his wallet when Boltz was engaged in intercourse. Finally, she testified that she left the scene when the police were chasing appellant, but subsequently, went to the police. Thereafter, she was adjudged delinquent for her participation in the episode.

On cross-examination, Ms. Mancuso testified that she was willing to "perform a trick" because she owed appellant some money. However, on re-direct examination, the district attorney elicited the following testimony:

"Q. Did you ever do anything like this before the night you met Dan Boltz on this particular evening?

"A. No.

"Q. And had you turned any tricks ever before that?

"A. No.

"Q. Have you been arrested for prostitution except this time? Except this time as a juvenile, at any other time have you ever been arrested?

"A. Yes.

"Q. You testified under oath you engaged in the acts of sexual intercourse for hire prior to March the 19th, 1975?

"A. Yes."

Appellant offered a different version of the episode. He claimed that Ms. Mancuso owed him money for a cab ride which he had given her earlier in the day. When he met her later in the day, she still had no money, but said that she intended to get some by "turning a trick." Later, he met Boltz:

"Q. [by defense counsel]: You started walking up Third Street, is that right?

"A. [by appellant]: Yes.

"Q. And in the course of walking down Third Street did you meet someone?

"A. Yes, I did.

"Q. Who was that individual that you met?

"A. I recognize him as Mr. Boltz, Daniel Boltz.

"Q. Was Daniel Boltz on foot or in his automobile?

"A. He was on foot at the time.

"Q. And when your path crossed, what happened?

"A. He had stepped up to me and asked—

"Q. Did you greet him, did he greet you?

"A. He greeted me, approached me.

"Q. How did you greet him? What took place or what was said at that time?

"A. He just spoke and I nodded my head.

"Q. And when you nodded your head what did he say?

"A. He then went into a conversation about did I know where he could find some action.

"Q. Do you know where he could find some action?

"A. Right.

"Q. Did you tell him at that time, did you tell him that this was Third Street, that was an area full of prostitutes and you just came across a young lady who was looking to turn a trick?

"A. Yes, I did.

"Q. Did Mr. Boltz then say about driving his car?

"A.  Yes.  He offered me five dollars to drive his car.

"Q.  And was that all there was at that time or did he ask if you minded introducing that girl to him?

"A.  Yes.

"Q.  And what did you say about his inquiry to introducing him to that girl?

"A.  I said I didn't mind.

"Q.  What did you then do?

"A.  I introduced him."

Appellant admitted that he drove Boltz's car and that he was aware that Boltz and Ms. Mancuso were having intercourse in the back seat of the car.  He claimed that Boltz and the girl negotiated their own fee arrangement and denied taking any money from Boltz's wallet.

After appellant's arrest, the police charged him by criminal complaint with promoting prostitution,[4] theft by unlawful taking,[5] and corruption of a minor.  The case was originally scheduled for trial on September 9, 1975, but was not reached on that date.  On September 15, 1975, the 180th day after the complaint was issued, the case was again listed, but could not be tried because defense counsel was not present.  The case was continued for one day, until September 16, when trial commenced.  A Jury found appellant guilty on all charges.  After denial of post-verdict motions, the lower court sentenced appellant to concurrent terms of one to two years on each charge.  This appeal followed.

## I.

Appellant contends that he should be discharged because the Commonwealth did not bring him to trial until the 181st day.  See Rule 1100(a)(2).  The issue was properly raised in a pre-trial motion to dismiss pursuant to Rule 1100(f).

---

**4.**  The Crimes Code, supra; 18 Pa.C.S. § 5902(b).

**5.**  The Crimes Code, supra; 18 Pa.C.S. § 3921.

The record includes the following discussion which took place on September 15, the final day of the period:

"[Assistant District Attorney]: Your Honor, the Commonwealth at this time now calls the case docketed to 822, 823 and 824 Criminal Division 1975, the caption being the Commonwealth versus Edward Earl Sampson. The charges are the corruption of minors, promoting prostitution and theft by unlawful taking.

"Your Honor, Mr. Steven Foldes of the public defenders' office has indicated that he represents Mr. Sampson in this matter. Mr. Foldes indicated to our office that he is of the Jewish faith. Today is Yom Kippur and today also, Your Honor, is the one-hundred and eightieth day from the time that the complaint was filed in this matter. Since Mr. Foldes is of the Jewish faith and Yom Kippur being today, he is unavailable and we respectfully request a continuance of one day until tomorrow in order to be able to try this charge.

"THE COURT: Okay, we will grant that continuance until tomorrow."

Rule 1100(d)(1) provides: "In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

"(1) the unavailability of the defendant or his attorney; . . . " The instant facts fall squarely within the rule. The case was listed for trial on September 15, but could not be reached because counsel was unavailable on that date. The period was thereby extended one day because of the exclusion of that day. See *Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976); *Commonwealth v. Lewis*, 237 Pa.Super. 357, 352 A.2d 99 (1975). The case was tried expeditiously on the following day.

## II.

■ Appellant contends that he cannot be found guilty of corruption of Ms. Mancuso because she was a prostitute. He

cites § 3104 of the Crimes Code as support for his position: "It is a defense to prosecution under section 3125 of this title (relating to corruption of minors) . . . for the actor to prove by a preponderance of the evidence that the alleged victim had, prior to the time of the offense charged, engaged promiscuously in sexual relations with others."[6]

Appellant's argument must fail because the issue was a factual one properly resolved by the jury. We cannot substitute our judgment for that of the jury when the record contains sufficient evidence to sustain the verdict when that evidence is read in a light most favorable to the verdict winner. *Commonwealth v. Blevins*, 453 Pa. 481, 309 A.2d 421 (1973). As indicated above, the girl testified that she had not previously performed sex for hire, although she conceded that she had previously testified falsely to committing other acts. We will not overturn the jury's resolution of · that issue and hold that the girl had engaged in prior promiscuous acts of sexual intercourse.

## III.

We agree with appellant's claim that the lower court erred in permitting the Commonwealth to impeach his testimony by introducing the record of his prior convictions.[7]

In *Commonwealth v. Bighum*, 452 Pa. 554, 566, 307 A.2d 255, 262 (1973), the Court stated "[w]hile admittedly the state has a legitimate interest to serve in showing that a

6. Section 3104 was amended subsequent to trial and now reads: "(a) General rule.—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence." as amended, May 18, 1976, P.L. 120, No. 53, effective 30 days from date of enactment. Obviously, on retrial, appellant will be entitled to prove his defense consistent with the law at the time he committed the offense. See *Commonwealth v. Pickett*, 224 Pa.Super. 441, 368 A.2d 799 (1976).

7. The record included a series of aggravated robberies that were committed in 1972.

defendant-witness is not worthy of belief, we cannot be unmindful of the tendency of a normal juror to accept testimony of prior convictions as a basis for finding a predisposition to commit the crime charged." See also, *Commonwealth v. Scoggins*, 466 Pa. 355, 353 A.2d 392 (1976); *Commonwealth v. King*, 455 Pa. 363, 316 A.2d 878 (1974). The Constitution does not prevent the state from putting the defendant to the choice between refusing to take the stand and being subject to impeachment by reference to former convictions. *McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). In *Bighum*, however, the Court made clear that safeguards are necessary to prevent the defendant from being "smeared" rather than merely being "discredited."

Under *Bighum*, an accused is entitled to two protections. First, the Commonwealth may introduce evidence of only those crimes involving dishonesty or false statement. *Commonwealth v. Bighum*, supra, 452 Pa. at 566, 307 A.2d at 262; *Commonwealth v. Moore*, 246 Pa.Super. 163, 369 A.2d 862 (1977). See also, Model Code of Evidence, Rule 106(1)(b); Uniform Rule of Evidence 21; McCormick, Evidence, § 43 at 86 (Cleary Ed. 1972); Krauser, The Use of Prior Convictions as Credibility Evidence; A Proposal for Pennsylvania, 46 Temp.L.Q. 291 (1973). Second, even if the defendant's record includes crimes involving dishonesty or false statement, the Commonwealth may still be precluded from using the criminal record. *Bighum* adopted the balancing approach employed by the Circuit Court of Appeals for the District of Columbia in *Luck v. United States*, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965):

"Rather than make the admissibility of such evidence turn solely on the nature of the specific conviction, we agree with the approach advocated in *Luck*. Some of the considerations mentioned in *Luck* were: the age and nature of the prior crimes; the length of the criminal record; the age and circumstances of the defendant; the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a

prior conviction. 348 F.2d at 769." 452 Pa. at 567, 307 A.2d at 263. *Bighum* underscored the importance of the last criterion: "Where the defendant has no other means by which to defend himself, it would be particularly unjust to subject him to the introduction of prior convictions. Or, where the prior conviction is not critically important to the Commonwealth's case—e. g., where other adequate means of attacking the defendant's credibility are available—exclusion of prior convictions is strongly indicated." Id., 452 Pa. at 567, 307 A.2d at 263.

▮ In the instant case, appellant had only one possible defense: he could deny that he took the aggressor's role in procuring a prostitute for Boltz and that he took money from Boltz's wallet. The Commonwealth produced the testimony of the only other witnesses to the crime. Both of those witnesses had a strong self-interest in portraying appellant as the villain. Prior to trial, Ms. Mancuso, incarcerated in the juvenile facility at Sleighton Farms, asked the district attorney whether her co-operation might secure release on probation. Boltz, a married man, was aware that he had engaged in criminal activity [8] and, when testifying, consistently downplayed his active participation in soliciting the services of a prostitute. Thus, appellant had to risk exposure of his criminal record because his testimony was the only substantive evidence which he could garner to contradict two accusers whose self-interest dictated that they shift as much responsibility as possible onto appellant. We find that the admission of appellant's prior criminal record was sufficiently prejudicial to amount to an abuse of discretion. See *Brooke v. United States*, 128 U.S.App.D.C. 19, 385 F.2d 279 (1967).

We, therefore, vacate the judgment of sentence and remand for a new trial.

VAN der VOORT, J., concurs in the result.

PRICE, J., dissents.

8.  See The Crimes Code, supra; 18 Pa.C.S. § 5902(e).