412 A.2d 617
**COMMONWEALTH of Pennsylvania**
v.
**Anthony M. HERMAN, Appellant.**
Superior Court of Pennsylvania.
Argued March 20, 1979.
Filed Oct. 19, 1979.

148

Carol K. McGinley, Assistant Public Defender, Allentown, for appellant.

Henry S. Perkin, Assistant District Attorney, Allentown, submitted a brief on behalf of Commonwealth, appellee.

Before PRICE, SPAETH and LIPEZ, JJ.

SPAETH, Judge:

Appellant was convicted by a jury of burglary,[1] theft by unlawful taking,[2] receiving stolen property,[3] criminal trespass,[4] attempted burglary,[5] and possession of an instrument of crime.[6] The convictions arose out of two incidents that occurred in an apartment complex on Florence Avenue in Bethlehem. At the time of the incidents, appellant was a resident of the complex. On this appeal, appellant argues 1) that the evidence was insufficient to sustain the convictions; 2) that the lower court erred in denying his motion to sever the charges; and 3) that the lower court erred in ruling that the Commonwealth could impeach him on the basis of his prior convictions.

In testing the sufficiency of the Commonwealth's evidence, we proceed in several steps. First, we accept as

1. 18 Pa.C.S.A. § 3502 (1973).

2. 18 Pa.C.S.A. § 3921 (1973).

3. 18 Pa.C.S.A. § 3925 (1973).

4. 18 Pa.C.S.A. § 3503(a) (1973).

5. 18 Pa.C.S.A. § 901 (1973).

6. 18 Pa.C.S.A. § 907 (1973).

true all the evidence upon which the finder of fact could properly have reached its verdict. Next we give the Commonwealth the benefit of all reasonable inferences arising from that evidence. And finally, we ask whether the evidence, and the inferences arising from it, are sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. This inquiry is bounded by two poles. On the one hand, the Commonwealth does not have to establish guilt to a mathematical certainty and may in a proper case rely wholly on circumstantial evidence. On the other hand, guilt must be proved; mere conjecture or surmise is not sufficient. *See Commonwealth v. Madison*, 263 Pa.Super. 206, 397 A.2d 818 (1978); *Commonwealth v. Morgan*, 265 Pa.Super. 225, 401 A.2d 1182 (1979). Read in the light of these principles, the Commonwealth's evidence may be summarized as follows.

Phillip Trump, who was the Commonwealth's first witness, was a student at Moravian College who lived in an apartment complex at 2103 Florence Avenue. After being out of his apartment during the entire evening of May 28, 1977, he returned the following morning at 2:00 a. m. Because it was a holiday weekend, most of the residents in the complex were absent. As he was proceeding to his apartment, however, he noticed appellant standing in the apartment complex's parking lot approximately forty feet from Sally Graham's apartment. Trump had known appellant for four-and-a-half months as his next door neighbor in the complex, and since the parking lot was well-lit, he was able to see appellant clearly. Trump went to his apartment, but ten minutes later heard noises outside the rear of the apartment. He went to the door, looked out, and saw appellant with a tool prying open the window screen of Carol Horvath's apartment. Again, as the area was well-lit, Trump was able to see appellant clearly. After watching him for fifteen to twenty seconds, Trump went to Graham's apartment to get another witness to appellant's actions. There he met Mark Hanlon, who agreed to return with

Trump to his apartment. On their way, however, they met appellant, who had since left Carol Horvath's window. Appellant was carrying a six-inch regular head screwdriver. Hanlon spoke with appellant briefly and continued with Trump to Trump's apartment. The police were then called. On an unspecified date after the night of the incidents, appellant approached Trump and told him that if he testified against him appellant would get him, and "it would be very expensive for him." N.T. 29–30.

Mark Hanlon, who was the Commonwealth's second witness, and Sally Graham went out on a date at 6:00 p. m. on May 28. When they returned to Graham's apartment at 1:45 a. m. the next morning, its door was open about ¼ inch. Marks on the door jamb showed that it had been pried open with something like a screwdriver. Inside the apartment, Hanlon saw that the drapes had been torn. Trump then appeared. As Hanlon and Trump were proceeding towards Trump's apartment, they met appellant, who was carrying a screwdriver. Hanlon asked what was happening, and appellant replied, "Nothing much." Hanlon and Trump then went to Trump's apartment, and the police were called.

Sally Graham, who was the Commonwealth's third witness, had locked her apartment door before leaving with Mark Hanlon for the evening. When they returned, she saw that someone had jimmied her door, entered the apartment, ripped her drapes, rifled through her jewelry, and stolen fifteen dollars from her wallet. Pry marks were present at her front window, and one corner of the window screen had been pried out.

Officer Heffernan of the Bethlehem Police Force, who was the Commonwealth's fourth witness, arrived at the scene at 1:56 a. m. on May 29. He observed that the window screen to Sally Graham's apartment was pried, and that her door was pried open. He also inspected the window screen of Carol Horvath's apartment and found that it was pried away from the window. The pry marks on Graham's screen and on Horvath's screen showed that a flat object had been used to pry both, that both were pried at the same spot, and

that both had been pulled out in the same way. Carol Horvath was not present at her apartment when Heffernan inspected her window screen, but no entry into her apartment had been gained. Heffernan went to appellant's apartment. Appellant told Heffernan that he had been home all evening, whereupon Heffernan arrested and searched appellant. No burglary tools or proceeds of the crimes were found. Appellant's apartment was not searched. Officer Heffernan testified that he believed that no one was with appellant at the time of the arrest, and that he received no other reports of burglary in the apartment complex that night.

-1-

Appellant argues that this evidence was insufficient to convict him of attempted burglary of Carol Horvath's apartment because neither Horvath nor the owner of the apartment complex testified that appellant lacked authority to enter her apartment.

While it is true that no direct evidence was presented showing that appellant's attempt to enter the apartment was unauthorized, circumstantial evidence established this element of the offense. That evidence showed that at approximately 1:45 a. m. on a holiday weekend, appellant attempted to pry open a secured window screen of an apartment that he neither owned nor rented. At the time of the attempt, the lessee of the apartment was not at home, nor were most of the residents of the housing complex. The damage caused to the window screen by the attempt was substantial. Appellant, who had been drinking previously, abandoned the attempt soon after he began it, and when he was approached by Trump and Hanlon, failed to explain his actions. Later, he told Officer Heffernan that he had been home the entire evening, and at some date after the night of the incident appellant threatened Trump not to testify. Finally, as the discussion below demonstrates, the Commonwealth proved that appellant had burglarized Sally Graham's apartment on the same night that he tried to enter Carol Horvath's. The evidence of these actions by appellant

sufficiently proved that in removing Carol Horvath's window screen, appellant acted without permission.[7]

■ Appellant argues that the evidence was insufficient to convict him of the burglary of Sally Graham's apartment because there was no evidence connecting him with the burglary. There was such evidence, however. Officer Heffernan testified that a flat object had been used to pry Sally Graham's window screen and door. From this, the jury could have concluded that the burglar of her apartment had considered entry through the window before prying her door open. Officer Heffernan further testified that the window screens on both Sally Graham's and Carol Horvath's apartments had been pulled out in the same way,[8] that pry marks appeared at the same spot on both screens, and that a flat object had also been used to pry Horvath's screen. From this testimony, the jury could have inferred that the person who attempted to enter Horvath's apartment had previously tried to enter Graham's apartment through the window. Trump testified unequivocally that appellant was the person who pried Carol Horvath's window. Trump also testified that when he arrived home at 2:00 a. m., appellant was approximately forty feet from Sally Graham's apartment.

7. Appellant argues that the evidence was nevertheless insufficient to show that he had not voluntarily abandoned the attempt prior to apprehension. *See* 18 Pa.C.S.A. 901(c) (1973). However, the jury could have reasonably inferred from the Commonwealth's evidence that appellant abandoned his attempt either because he heard Trump's and Hanlon's voices after they left Sally Graham's apartment together, or because the window screen was more difficult to unfasten than he had anticipated.

  Appellant argues that the evidence was insufficient to sustain his conviction of possession of an instrument of crime because the Commonwealth failed to prove he possessed the screwdriver with a criminal intent, but the evidence just discussed shows that we must also reject this argument.

8. Officer Heffernan's testimony may have been somewhat inconsistent with that of the apartment owner's, which was introduced as rebuttal evidence by the Commonwealth. The owner testified that though both window screens were scratched, the damage done to Horvath's window screen was different from the damage done to Graham's. Any inconsistency that existed, however, went to the weight of Officer Heffernan's testimony, and was a matter for the jury to resolve.

Furthermore, appellant was seen by both Trump and Hanlon carrying a regular head screwdriver. Although an accused's mere presence at the scene of a burglary is insufficient proof that he was the burglar, *Commonwealth v. Roscioli*, 454 Pa. 59, 309 A.2d 396 (1973); *Commonwealth v. Stanley*, 453 Pa. 467, 309 A.2d 408 (1973), we believe that the evidence just recited, taken with the evidence that the two incidents occurred the same evening and in the same, relatively deserted, apartment complex, was sufficient to establish that appellant burglarized Sally Graham's apartment. *See generally Commonwealth v. Cimaszewski*, 447 Pa. 141, 288 A.2d 805 (1972).

-2-

■ We reject appellant's argument that the lower court abused its discretion in denying his motion to sever the charges. This argument depends on appellant's other argument, which we have just rejected, that there was no evidence linking him to the burglary of Sally Graham's apartment, and on the further argument that evidence of the commission of each of the crimes would not have been admissible as evidence in a separate trial for the others. *See generally, Commonwealth v. Lasch*, 464 Pa. 573, 347 A.2d 690 (1975) (Opinion in Support of Affirmance); *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973) (plurality opinion).

Appellant's remaining argument is that the lower court erred in ruling, after a hearing, that if appellant testified, the Commonwealth could impeach him on the basis of his prior convictions for burglary, theft, and receiving stolen property.[9]

In *Commonwealth v. Bighum*, 452 Pa. 554, 567, 307 A.2d 255, 263 (1973), the Supreme Court held that evidence of a prior offense involving dishonesty should be admitted to

9. Under the lower court's ruling, appellant was not to be impeached on the basis of his prior convictions for illegal use of solvents and possession of marijuana. However, as a result of the court's ruling, appellant chose not to testify, so that in fact, no evidence of any of his prior convictions was introduced.

impeach the testimony of a defendant only after the trial court has weighed the following factors:

the age and nature of the prior crimes; the length of the criminal record; the age and circumstances of the defendant; the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction.

Of these factors, the last is of critical importance, for [w]here the defendant has no other means by which to defend himself, it would be particularly unjust to subject him to the introduction of prior convictions. Or, where the prior conviction is not critically important to the Commonwealth's case—e. g., where other adequate means of attacking the defendant's credibility are available—exclusion of prior convictions is strongly indicated.

*Id.* (citations omitted)

*See also Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978); *Commonwealth v. Cobb*, 258 Pa.Super. 91, 392 A.2d 698 (1978); *Commonwealth v. Sampson*, 250 Pa.Super. 157, 378 A.2d 874 (1977).

■ Upon weighing these factors here, we conclude that the lower court did not abuse its discretion in ruling that appellant could be impeached on the basis of his prior convictions. First, appellant's convictions were less than a year and a half old and involved crimes of dishonesty. *See Commonwealth v. Kahley*, 467 Pa. 272, 356 A.2d 745 (1976), *cert. denied* 429 U.S. 1044, 97 S.Ct. 746, 50 L.Ed.2d 757 (1977); *Commonwealth v. Amos*, 445 Pa. 297, 284 A.2d 748 (1971). Second, appellant was an adult at the time of those convictions. Third, the Commonwealth's case was exceedingly close, and hinged on the testimony of one witness— Phillip Trump. No one but Trump saw appellant pry Carol Horvath's window screen. Without his testimony, appellant could not have been convicted of the attempted break-in of Horvath's apartment, and without his connection with that attempt established, appellant could not have been convicted

of the burglary of Sally Graham's apartment. Moreover, appellant presented two alibi witnesses at trial. Donna Serrano, a friend of appellant's wife, testified that she was at appellant's apartment of the night of the incident from 10:00 p. m. until after midnight, and that appellant was in the apartment the entire time. Appellant's wife testified that she was with appellant the entire evening, and that he left their apartment only for one or two minutes after 1:00 a. m. when they heard banging outside. Appellant argues that because neither of these witnesses could account for his actions during the time he was outside the apartment, it was crucial that he testify as to his actions after leaving the apartment when he was seen in front of Horvath's window. However, given that the outcome of the case turned on the credibility of one Commonwealth witness, and that the testimony of that witness was contradicted by the testimony of appellant's wife,[10] we believe that the Commonwealth's legitimate need to discredit appellant as an untruthful person outweighed appellant's need to take the stand without fear that he would be impeached by his past record. *Compare Commonwealth v. Flores*, 247 Pa.Super. 140, 371 A.2d 1366 (1977) (lower court did not abuse discretion in allowing Commonwealth to impeach defendant on basis of recent burglary conviction where defendant called four alibi witnesses to present his version of the facts). Furthermore, it should be noted that the record does not reveal (nor has appellant asserted) that the Commonwealth had access to alternative means of attacking appellant's credibility.[11]

Affirmed.

10. Trump testified that he had seen appellant in the parking lot ten minutes before the attempted burglary of Horvath's apartment.

11. Appellant argues that the Commonwealth failed to show at the "Bighum hearing" that its need to impeach appellant on the basis of his prior convictions overcame the potential for prejudice that the introduction of such evidence would create. Appellant is correct that the Commonwealth did not meet its burden of proof at the hearing. *See Commonwealth v. Roots, supra.* However, a new trial is not required since the trial record shows that the lower court's ruling did not amount to an abuse of discretion.