528 A.2d 1326

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Edward Charles RANDALL, Sr., a/k/a Charles Randall, Appellee.**

Supreme Court of Pennsylvania.

Argued April 17, 1986.

Decided July 9, 1987.

George C. Yatron, Dist. Atty., Charles M. Guthrie, Jr., Asst. Dist. Atty., for appellant.

Scott D. Keller, Reading, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION *

McDERMOTT, Justice.

This appeal is from the order of the Superior Court reversing the judgment of sentence entered by the Court of Common Pleas of Berks County, and awarding appellee a new trial. The basic facts of this case are not disputed.

* This opinion was assigned to this author on January 28, 1987.

Appellee, Edward Charles Randall, Sr., was tried for murder and possession of an instrument of crime as a result of a 1981 shooting at a Reading social club. At trial the Commonwealth's case-in-chief depended upon two eye-witnesses to the shooting. They testified that appellee and the victim had an argument, that after this argument appellee left the club only to return, at which time another argument took place culminating in the shooting of the victim.

In his defense appellee did not deny the shooting, but contended that the shooting was justified because he believed the victim was armed, and because the victim had threatened him with a gun during their first argument.

On rebuttal the Commonwealth introduced the evidence which is the subject of the present appeal, i.e., testimony attesting to appellee's prior conviction for burglary which had occurred six years before the present offense. The purpose of this rebuttal evidence was to call into question appellee's credibility.

This evidence was objected to by trial counsel, but the trial judge, after duly considering the required factors, admitted the evidence. The jury returned a verdict of guilty as to third degree murder, and guilty of possession of an instrument of crime. On appeal the Superior Court reversed, and remanded the case for a new trial.

In reversing, the Superior Court held that the trial court erred in admitting the rebuttal testimony. The Commonwealth sought allowance of appeal which was granted. We now reverse.

As is obvious from the above history the issue in this case concerns the use of prior convictions for the purpose of impeaching a defendant who testifies on his own behalf. We have addressed this issue a number of times before, most notably in the cases of *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973), and *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978).

In *Commonwealth v. Bighum, supra,* this court limited the admissibility of prior convictions to "crimes involving dishonesty or false statement." *Id.,* 452 Pa. at 566, 307 A.2d at 262. Then, in reliance upon a federal circuit court decision,[1] the Court declared that certain "considerations" should be taken into account before admitting evidence of prior convictions. Those considerations were:

> the age and nature of the prior crimes; the length of the criminal record; the age and circumstances of the defendant; the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction.

*Id.,* 452 Pa. at 567, 307 A.2d at 263 (citations omitted).

Later, in *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978), this Court expanded upon *Bighum.* The Court stated:

> In making the determination as to the admissibility of a prior conviction for impeachment purposes, the trial court should consider: (1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; (2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

*Id.,* 482 Pa. at 39–40, 393 A.2d at 367.

Although this Court in *Roots* mandated that the *Bighum* factors were to be considered, the Court left the ultimate decision as to admissibility within the discretion of the trial

1. *Luck v. United States,* 348 F.2d 763 (D.C.Cir.1965).

judge. Unfortunately, the grant of that decision making ability has proven illusory, for we continually have cases like the present where an appellate court acting on a cold record concludes that the trial judge's on-the-spot judgment was wrong. *See Commonwealth v. Tangle,* 349 Pa.Super. 574, 504 A.2d 193 (1986) allocatur granted 511 Pa. 364, 513 A.2d 1381 (1986). *Commonwealth v. Canada,* 308 Pa.Super. 494, 454 A.2d 643 (1983); *Commonwealth v. Williams,* 286 Pa.Super. 444, 429 A.2d 22 (1981); *Commonwealth v. Williams,* 273 Pa.Super. 389, 417 A.2d 704 (1980); *Commonwealth v. Phillips,* 272 Pa.Super. 16, 414 A.2d 646 (1979); *Commonwealth v. Cobb,* 258 Pa.Super. 91, 392 A.2d 698 (1978); *Commonwealth v. Sampson,* 250 Pa.Super. 157, 378 A.2d 874 (1977). Thus we think some re-evaluation is necessary.

In *Bighum* and *Roots* this Court attempted to accommodate the needs of the Commonwealth to fully expose witnesses to the view of the jury, while at the same time protecting the defendant from a finding of guilt based solely on a prior history. It was the obvious desire of the Court to provide some objective criteria for determining the admissibility of prior convictions. However, that criteria has proven less than exact, and has done more to engender appeals than to guide courts and litigants. Therefore, the time has come to revise *Bighum* and *Roots* in favor of more concrete guidelines for the admission of prior conviction evidence.

Under the Federal Rules of Evidence a prior conviction is *per se* admissible for the purpose of attacking credibility if the conviction "involved dishonesty or false statement." F.R.E. 609(a)(1)(2). The only exception to this rule is where "a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect." F.R.E. 609(b).

We believe that by adopting this rule we can still accommodate the competing interests of full disclosure and fairness to the defendant, while at the same time affording more certainty to the litigants and courts below. In addition we note that the vitality of *Bighum* and *Roots* will not be totally extinguished, as the considerations therein will be relevant in determining whether convictions which fall in the exception category are admissible.

Therefore, while we do not adopt the federal rule *per se* we do modify our current rule to the following extent: evidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement, and the date of conviction or the last day of confinement is within ten years of the trial date. If a period greater than ten years has expired the presiding judge must determine whether the value of the evidence substantially outweighs its prejudicial effect.

Applying that rule to the case at hand, the evidence of Mr. Randall's prior conviction is clearly admissible.

Hence, the order of the Superior Court is reversed.

NIX, C.J., files a dissenting opinion in which ZAPPALA, J., joins.

ZAPPALA, J., files a dissenting opinion in which NIX, C.J., joins.

NIX, Chief Justice, dissenting.

The majority today purports to "revise" the salutary standards announced in *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973), and *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978), governing the admissibility of a criminal defendant's prior convictions as impeachment evidence, "in favor of more concrete guidelines." At 414. In reality the majority sweeps aside a variety of evidentiary considerations heretofore regarded as crucial to a determination of admissibility, substituting in their place a *per se* rule based on a single arbitrary factor, *i.e.*, whether the

prior conviction or release from confinement thereon occurred within ten years of the commencement of trial. The rule announced today is not only inadequate to protect the right of the defendant to a fair trial, but is also an unnecessary departure from our settled jurisprudence.

I seriously question the legitimacy of the concern which gives rise to the majority's ill-considered reassessment of the *Bighum-Roots* test of admissibility. In essence, the problem identified by the majority is that *Bighum-Roots* is being misapplied by reviewing courts. In reality, however, discretionary trial court rulings applying the teaching of *Bighum* and *Roots* have been upheld on appeal in the overwhelming majority of reported appellate decisions. *See, e.g., Commonwealth v. Nenninger,* 359 Pa.Super. 444, 519 A.2d 433 (1986); *Commonwealth v. Gordon,* 355 Pa.Super. 25, 512 A.2d 1191 (1986); *Commonwealth v. Lewis,* 350 Pa.Super. 595, 504 A.2d 1310 (1986); *Commonwealth v. Richardson,* 347 Pa.Super. 564, 500 A.2d 1200 (1985); *Commonwealth v. Gallagher,* 341 Pa.Super. 152, 491 A.2d 196 (1985); *Commonwealth v. Johnson,* 340 Pa.Super. 26, 489 A.2d 821 (1985); *Commonwealth v. Bunch,* 329 Pa.Super. 101, 477 A.2d 1372 (1984); *Commonwealth v. Kearse,* 326 Pa.Super. 1, 473 A.2d 577 (1984); *Commonwealth v. Toomey,* 321 Pa.Super. 281, 468 A.2d 479 (1984); *Commonwealth v. Gonce,* 320 Pa.Super. 19, 466 A.2d 1039 (1983); *Commonwealth v. Zabala,* 310 Pa.Super. 301, 456 A.2d 622 (1983); *Commonwealth v. Tabas,* 308 Pa.Super. 43, 454 A.2d 12 (1982); *Commonwealth v. Brunner,* 305 Pa.Super. 411, 451 A.2d 714 (1982), *vacated on other grounds,* 502 Pa. 358, 466 A.2d 991 (1983); *Commonwealth v. Kaster,* 300 Pa.Super. 174, 446 A.2d 286 (1982); *Commonwealth v. Hutchinson,* 290 Pa.Super. 254, 434 A.2d 740 (1981); *Commonwealth v. Clark,* 280 Pa.Super. 1, 421 A.2d 374 (1980), *aff'd. per curiam,* 501 Pa. 393, 461 A.2d 794 (1983); *Commonwealth v. Whitner,* 278 Pa.Super. 175, 420 A.2d 486 (1980); *Commonwealth v. Woods,* 275 Pa.Super. 392, 418 A.2d 1346 (1980); *Commonwealth v. Washington,* 274 Pa. Super. 560, 418 A.2d 548 (1980); *Commonwealth v. Dombrauskas,* 274 Pa.Super. 452, 418 A.2d 493 (1980); *Com-*

*monwealth v. Stafford,* 272 Pa.Super. 505, 416 A.2d 570 (1979); *Commonwealth v. Herman,* 271 Pa.Super. 145, 412 A.2d 617 (1979); *Commonwealth v. Epps,* 270 Pa.Super. 295, 411 A.2d 534 (1979); *Commonwealth v. Henson,* 269 Pa.Super. 314, 409 A.2d 906 (1979); *Commonwealth v. Cooke,* 267 Pa.Super. 34, 405 A.2d 1290 (1979). *Commonwealth v. Ashmore,* 266 Pa.Super. 181, 403 A.2d 603 (1979); *Commonwealth v. Golson,* 263 Pa.Super. 143, 397 A.2d 441 (1979); *Commonwealth v. Vickers,* 260 Pa.Super. 479, 394 A.2d 1027 (1978); *Commonwealth v. Vickers,* 260 Pa.Super. 469, 394 A.2d 1022 (1978); *Commonwealth v. Johnston,* 258 Pa.Super. 429, 392 A.2d 869 (1978); *Commonwealth v. Connor,* 258 Pa.Super. 246, 392 A.2d 776 (1978); *Commonwealth v. Quartman,* 253 Pa.Super. 460, 385 A.2d 429 (1978); *Commonwealth v. Rompilla,* 250 Pa.Super. 139, 378 A.2d 865 (1977); *Commonwealth v. Bryant,* 247 Pa.Super. 386, 372 A.2d 880 (1977); *Commonwealth v. Flores,* 247 Pa.Super. 140, 371 A.2d 1366 (1977); *Commonwealth v. Campbell,* 244 Pa.Super. 505, 368 A.2d 1299 (1976); *Commonwealth v. Smith,* 240 Pa.Super. 212, 361 A.2d 862 (1976), *rev'd. on other grounds,* 477 Pa. 424, 383 A.2d 1280 (1978). Moreover, the rate of affirmance in cases in which a published opinion has been deemed unnecessary is, in all likelihood, even greater. Thus it is evident that the predicate for the majority's hasty dismantling of *Bighum-Roots* is for all practical purposes nonexistent. Even if it could be demonstrated that the Superior Court consistently substituted its judgment for that of the trial court, the solution would be to circumscribe review of *Bighum-Roots* questions by that court, not to eliminate the trial court's opportunity to exercise its discretion in the first instance. What is significant is that the majority implicitly accepts the validity of the underlying rationale of the *Bighum-Roots* approach.

Even more disturbing than the needless abandonment of *Bighum-Roots* is the majority's decision to embrace a *per se* rule of admissibility concerned solely with whether the prior conviction or release after incarceration occurred with-

in the ten-year period preceding trial. Such an approach is both arbitrary and jurisprudentially unsound.[1] The due process concern underlying this Court's decisions in *Bighum-Roots* was the inherent potential for prejudice in the revelation to the jury that the defendant has been convicted of a prior crime. We also recognized the prosecution's right to confront a defendant who elects to testify in his own behalf. We attempted to strike a balance between these competing interests so that a prior conviction would be admissible as impeachment evidence only "where its introduction was of essential evidentiary value to the prosecution and not unreasonably unfair to the defense." *Roots, supra*, 482 Pa. at 39, 393 A.2d at 367. To facilitate such a determination we identified a number of relevant factors to be considered. The age of the prior conviction was only one of those factors. Among the other considerations identified were: the degree of relevance to the veracity of the defendant; the likelihood that the evidence would merely smear the defendant's character; the age and circumstances of the defendant; the Commonwealth's need for the evidence given the strength of the prosecution's case and the availability of alternative means of attacking credibility; and the availability of other witnesses to the defendant. *Roots, supra*, 482 Pa. at 39–40, 393 A.2d at 367. The majority makes no attempt to demonstrate why these important factors in weighing admissibility have lost their vitality or how a "ten-year" rule will conceivably satisfy the substantial concerns expressed in *Bighum* and *Roots*.

1. It should be noted that *per se* rules are not favored by this Court. *See, e.g., Colosimo v. Pennsylvania Electric Company*, 513 Pa. 155, 518 A.2d 1206 (1986); *Kindle v. Commonwealth, State Board of Nurse Examiners*, 512 Pa. 44, 515 A.2d 1342 (1986); *Commonwealth v. Eubanks*, 511 Pa. 201, 512 A.2d 619 (1986); *Commonwealth v. Maguigan*, 511 Pa. 112, 511 A.2d 1327 (1986); *Commonwealth v. Christmas*, 502 Pa. 218, 465 A.2d 989 (1983); *Commonwealth v. Emanuel*, 501 Pa. 581, 462 A.2d 653 (1983); *Commonwealth v. Keasley*, 501 Pa. 461, 462 A.2d 216 (1983); *Commonwealth, Unemployment Compensation Board of Review v. Ceja*, 493 Pa. 588, 427 A.2d 631 (1981); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Sexton*, 485 Pa. 17, 400 A.2d 1289 (1979).

In my view the majority's *per se* rule is purely arbitrary and fails to ensure even the relevance of the prior conviction. The rule makes no distinction between recent and stale convictions; a ten-year old conviction is of questionable relevance to a defendant's veracity. Consider the example of a twenty-five year old defendant who was convicted of a prior crime at fifteen.[2] That childhood conviction would be admissible to impeach that defendant's credibility as an adult. Another example of the absurd operation of the rule would be the case of a defendant convicted at age twenty and sentenced to ten years' imprisonment who is released at age thirty and ten years later is tried for a new offense. That defendant's twenty-year old conviction would be admissible in spite of its unquestionable remoteness. The "ten-year" rule will also produce the anomalies that are an inevitable result of arbitrary line-drawing. A ten-year old conviction, which in my judgment is too attenuated in any event to have bearing on the defendant's credibility, will be admitted; but a conviction only slightly more remote will in all likelihood be excluded, notwithstanding the majority's assertion that the latter decision would be discretionary. Such disparate results exacerbate the arbitrariness of an already mechanical test. In light of our trial courts' documented ability to make appropriate determinations under *Bighum-Roots* on a case-by-case basis, and the Superior Court's demonstrated deference to the exercise of that discretion, the majority's *per se* rule is not only simplistic but demeaning to our judicial system.

In the instant case, the Superior Court properly concluded that because the defendant had no means other than his own testimony to substantiate his claim of self-defense and the Commonwealth had other adequate means of attacking the defendant's credibility, the trial court's decision to admit the six year-old prior burglary conviction was error under the *Bighum-Roots* standard. I agree with the Superior Court that the award of a new trial is appropriate.

**2.** This hypothetical assumes, of course, that the defendant was certified for trial as an adult. *See* 42 Pa. C.S. § 6355.

For all of the foregoing reasons I am compelled to register my emphatic dissent.

ZAPPALA, J., joins in this dissenting opinion.

ZAPPALA, Justice, dissenting.

I cannot join in the Court's decision. The initial error, as I see it, lies in answering a question which has not been asked. In my review of the briefs and the record I find no indication that the Commonwealth has even remotely suggested that the holdings of *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978) and *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973), should be revised or overruled. Appellee Randall has certainly not done so. By broadly stating the matter—"the issue in this case *concerns* the use of prior convictions for the purpose of impeaching a defendant who testifies in his own behalf," Majority Opinion at 412 (emphasis added)—the majority attempts to validate what is no more than a *sua sponte* reevaluation of a rule of evidence developed in prior cases. In seeking our review, the Commonwealth argued no more than that the trial court had properly applied *Roots* and *Bighum* and that Superior Court exceeded the proper scope of its review (abuse of discretion) in reversing. On this issue the briefs of the parties were confined to assessments of the record according to the *Roots/Bighum* factors.

We do a great disservice to the parties, their counsel, and our system of justice when we convert the cause presented into a vehicle for changing the law according to our perception of the need for change. The parties, though one may benefit and thus have no inclination to register complaint, can have no confidence in the stability of rules if the Court may dispense with them on its own motion. Counsel must wonder to what purpose they expend time and effort carefully crafting arguments by reference to prior cases and arguments of policy, if the Court will pay them no heed and decide a matter according to its own whim. Our entire process suffers when we deign ourselves sufficiently wise to choose from among the many schools of thought, without

input through recognized channels but solely according to our own resources.

In *Commonwealth v. Bighum*, the appellant argued the unfairness of the traditional rule of *Commonwealth v. Butler*, 405 Pa. 36, 173 A.2d 468 (1961) which permitted rebuttal testimony of a defendant's prior criminal record to impeach him if he took the witness stand in his own defense. Acknowledging the argument that the jury was entitled to know the background of the defendant who presented himself as a witness worthy of belief, Bighum responded that the potential for prejudicial misuse of such evidence to convict a defendant on the basis of his prior record was too great to risk its use. The Commonwealth answered by reviewing the historical development of the rule from the common law rule disqualifying convicted felons as witnesses, to statutory abrogations of that rule and statutory and case development of qualifications to it. The Commonwealth reiterated the policy behind the *Butler* rule and reasoned that the mandatory cautionary instruction as to the limited use of the evidence sufficed to mitigate any unfairness.

Thus directed by the parties to the issue and with the benefit of their insights and arguments, "we recognize[d] that the rule of evidence at issue here [had] been the object of much controversy in recent years, and we [felt] it [was] appropriate to discuss its propriety under our supervisory powers." *Bighum*, 452 Pa. at 565, 307 A.2d at 262 (footnote omitted). Upon careful examination of the rule and its purpose, we determined that because the evidence was offered to test veracity, only crimes involving dishonesty or false statement had probative value. We cited Model Code of Evidence Rule 106(1)(b), Uniform Rule of Evidence 21, and McCormick on Evidence as being in accord with this approach, and cited *comparatively* Federal Rule of Evidence 609.

Even as to these convictions, however, we observed that other factors might diminish probative value so as to make them excludable in a proper case. In this regard we re-

ferred to *Luck v. United States*, 348 F.2d 763 (D.C.Cir. 1965), in which the court, interpreting a discretionary rule of evidence, offered a number of factors which might be relevant to a judge in exercising his discretion.[1]

It is apparent from reading *Bighum* that our decision was not made in a vacuum but reflected a careful weighing of the many policy considerations involved. Cases and commentators were widely split over the use of such evidence and its conditions, and they remain so today. By citing the federal rule only comparatively, and agreeing with the approach in a case which the federal rule rejected, we implicitly found that the federal rule did not properly accommodate all interests. We amplified on these findings in *Commonwealth v. Roots*, being particularly solicitous of the effect of the rule on defendants as witnesses in their own behalf. [It should be noted that the general rule in its classic formulation and in the federal rule is applicable to all witnesses.]

Today, however, the majority offers only the bald statement that "[w]e believe that by adopting [the federal] rule we can still accommodate the competing interests of full disclosure and fairness to the defendant, while at the same time affording more certainty to the litigants and the courts below." No explanation is given why what was once rejected is now accepted.[2]

1. This discretionary rule, 14 D.C. Code § 305 (1965), was shortly thereafter amended by Congress to provide that all felonies (i.e., crimes punishable by imprisonment greater than one year) and all crimes of dishonesty or false statement regardless of degree, were *admissible*, again a discretionary rule. The amended version of § 305 became the model for Fed.R.Ev. 609(a), but *obviously did not survive* without substantial change. As adopted, Rule 609(a) provides that evidence of prior convictions *shall be admitted* if the convictions are crimes of dishonesty or false statement, a balance of prejudice and probative value being employed for all other felonies.

2. I again express my dismay at the tendency to adopt without analysis the federal resolution of an issue. By abandoning sound and reasoned decisions of state law to mere mimickery of federal rules, we reduce our laws and our Commonwealth Constitution to mere window-dressing.

The sole clue as to the impetus for this substantial change is the reference to one other case wherein allocatur has been granted that also "concerns" the admissibility of prior convictions as impeachment. In *Commonwealth v. Tangle*, 349 Pa.Super. 574, 504 A.2d 193 (1986), *allocatur granted*, 511 Pa. 364, 513 A.2d 1381 (1986) (argued March 11, 1987), we granted allocatur on the Commonwealth's request to determine whether Superior Court had exceeded the proper scope of its review in finding an abuse of discretion by the trial court. My research indicates that this is the first time in the fourteen years since *Bighum* was decided that this Court has found it appropriate to examine the way in which Superior Court is overseeing decisions committed to the trial court's discretion. Of forty reported decisions of that court applying the rule of *Bighum* or *Roots*, thirty-two affirmed the trial court's exercise of discretion.[3] In only six cases, duly noted by the majority,

**3.** *Commonwealth v. Nenninger*, 359 Pa.Super. 444, 519 A.2d 433 (1986); *Commonwealth v. Duffy*, 355 Pa.Super. 145, 512 A.2d 1253 (1986); *Commonwealth v. Gordon*, 355 Pa.Super. 25, 512 A.2d 1191 (1986); *Commonwealth v. Bailey*, 354 Pa.Super. 51, 511 A.2d 180 (1986); *Commonwealth v. Lewis*, 350 Pa.Super. 595, 504 A.2d 1310 (1986); *Commonwealth v. Johnson*, 340 Pa.Super. 26, 489 A.2d 821 (1985); *Commonwealth v. Bunch*, 329 Pa.Super. 101, 477 A.2d 1372 (1984); *Commonwealth v. Toomey*, 321 Pa.Super. 281, 468 A.2d 479 (1983); *Commonwealth v. Gonce*, 320 Pa.Super. 19, 466 A.2d 1039 (1983); *Commonwealth v. Tabas*, 308 Pa.Super. 43, 454 A.2d 12 (1982); *Commonwealth v. Kaster*, 300 Pa.Super. 174, 446 A.2d 286 (1982); *Commonwealth v. Hutchinson*, 290 Pa.Super. 254, 434 A.2d 740 (1981); *Commonwealth v. Clark*, 280 Pa.Super. 1, 421 A.2d 374 (1980); *Commonwealth v. Whitner*, 278 Pa.Super. 175, 420 A.2d 486 (1980); *Commonwealth v. Woods*, 275 Pa.Super. 392, 418 A.2d 1346 (1980); *Commonwealth v. Dombrauskas*, 274 Pa.Super. 452, 418 A.2d 493 (1980); *Commonwealth v. Stafford*, 272 Pa.Super. 505, 416 A.2d 570 (1979); *Commonwealth v. Herman*, 271 Pa.Super. 145, 412 A.2d 617 (1979); *Commonwealth v. Epps*, 270 Pa.Super. 295, 411 A.2d 534 (1979); *Commonwealth v. Henson*, 269 Pa.Super. 314, 409 A.2d 906 (1979); *Commonwealth v. Cooke*, 267 Pa.Super. 34, 405 A.2d 1290 (1979); *Commonwealth v. Rose*, 265 Pa.Super. 159, 401 A.2d 1148 (1979); *Commonwealth v. Golson*, 263 Pa.Super. 143, 397 A.2d 441 (1979); *Commonwealth v. Johnston*, 258 Pa.Super. 429, 392 A.2d 869 (1978); *Commonwealth v. Quartman*, 253 Pa.Super. 460, 385 A.2d 429 (1978); *Commonwealth v. Boyd*, 250 Pa.Super. 487, 378 A.2d 1253 (1977); *Commonwealth v. Jones*, 250 Pa.Super. 98, 378 A.2d 471 (1977); *Commonwealth v. Love*, 248 Pa.Super. 387, 375 A.2d 151 (1977); *Commonwealth v. Bryant*, 247 Pa.Super. 386, 372 A.2d 880 (1977);

was it held that the trial court improperly balanced the factors;[4] in two cases the court found the rule violated where the prior crime (rape) was held not to involve dishonesty or false statement.[5] Moreover, in the five reported cases in which this Court has had occasion to address the issue, we have affirmed the trial court's exercise of its discretion four times [6] and reversed only once, the reversal being *Commonwealth v. Roots.* Under the circumstances I think the majority stretches the point in claiming that "the grant of that decision making ability has proven illusory, for we continually have cases where an appellate court acting on a cold record concludes that the trial judge's on-the-spot judgment was wrong." I hardly think the majority has demonstrated the necessity of re-evaluating our prior decisions. Even less have they provided reasons why those decisions should be altered.

The appellee was tried for third degree murder and possession of an instrument of crime for a 1981 shooting at a Reading social club. In addition to testimony of police officers and medical and other investigators, the Commonwealth's case included testimony of two eyewitnesses to the shooting. These witnesses described an argument between the victim and the appellee, after which the appellee left the club, later returned, and again argued with the victim,

*Commonwealth v. Flores,* 247 Pa.Super. 140, 371 A.2d 1366 (1977); *Commonwealth v. Campbell,* 244 Pa.Super. 505, 368 A.2d 1299 (1976) and *Commonwealth v. Smith,* 240 Pa.Super. 212, 361 A.2d 862 (1976). *See also, Carlson Mining Co. v. Titan Coal Co., Inc.,* 343 Pa.Super. 364, 494 A.2d 1127 (1985) (*Bighum* analysis appropriate in civil case, no abuse of discretion by trial court).

4. *Commonwealth v. Canada,* 308 Pa.Super. 494, 454 A.2d 643 (1983); *Commonwealth v. Williams,* 286 Pa.Super. 444, 429 A.2d 22 (1981); *Commonwealth v. Williams,* 273 Pa.Super. 389, 417 A.2d 704 (1980); *Commonwealth v. Phillips,* 272 Pa.Super. 16, 414 A.2d 646 (1979); *Commonwealth v. Cobb,* 258 Pa.Super. 91, 392 A.2d 698 (1978); and *Commonwealth v. Sampson,* 250 Pa.Super. 157, 378 A.2d 874 (1977).

5. *Commonwealth v. Benefiel,* 254 Pa.Super. 248, 385 A.2d 1003 (1978); *Commonwealth v. Moore,* 246 Pa.Super. 163, 369 A.2d 862 (1977).

6. *Commonwealth v. Perrin,* 484 Pa. 188, 398 A.2d 1007 (1979); *Commonwealth v. Green,* 477 Pa. 170, 383 A.2d 877 (1978); *Commonwealth v. Kahley,* 467 Pa. 272, 356 A.2d 745 (1976) and *Commonwealth v. Miller,* 465 Pa. 458, 350 A.2d 855 (1976).

eventually shooting him. The appellee's only evidence was his own testimony that the victim had threatened him with a gun during the first argument, and that he had seen the butt of a gun in the victim's jacket pocket immediately prior to shooting him. The Commonwealth introduced rebuttal testimony of a witness who was present at the club but had not seen the shooting, to the effect that prior to the shooting he had not seen any guns at the club that day. The Commonwealth also introduced the evidence which is the subject of this appeal to challenge the credibility of the appellant's testimony, a conviction for burglary which had occurred six years before the present offense.

As mentioned previously, the parties did not dispute that the applicable law in this case is that derived from our decisions in *Commonwealth v. Bighum* and *Commonwealth v. Roots.* In *Bighum* we limited the evidentiary use of a testifying defendant's prior convictions to crimes involving dishonesty or false statement and, repudiating the rule of automatic admissibility of such convictions, we noted some of the considerations to be accounted for in balancing the interests on either side of the admissibility question. These considerations include the age and nature of the prior crimes, the age and circumstances of the defendant, and, most significant, the extent to which it is more important to determining the truth of the case for the jury to hear the defendant's testimony than to know of prior offenses. In *Roots* we refined these considerations somewhat. We held that the court should consider "the degree to which the commission of the prior offense reflects upon the veracity of the defenant-witness," 482 Pa. at 39, 393 A.2d at 367, noting that the age of the conviction and the nature of the prior offense must be taken into account. We observed by way of example that "a larceny accomplished by stealth or misrepresentation bears more directly upon veracity than a taking by force." *Id.* at n. 4. We further illustrated some of the factors important in the balance:

> the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to

smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; ... the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and ... the existence of alternative means of attacking the defendant's credibility.

*Id.*, 482 Pa. at 39–40, 393 A.2d at 367. Recognizing the strong potential for prejudice in the mere existence of a criminal record, we required this examination to ensure that an accused may present a defense without being exposed to this stigma unless strong countervailing reasons appeared. "Where the defendant has no other means by which to defend himself, it would be particularly unjust to subject him to the introduction of prior convictions." *Bighum,* 452 Pa. at 567, 307 A.2d at 263. As the proponent of the evidence the Commonwealth bore the burden of establishing that the need for impeaching the defendant's credibility overcomes the potential of prejudice in the proposed evidence. *Roots,* 482 Pa. at 41, 393 A.2d at 368.

In assessing a claim that a trial court erred in ruling on the admissibility of such evidence, appellate courts were given a narrow scope of review. The determination was within the sound discretion of the trial court, to be upheld unless there was an abuse of that discretion. *See Bighum,* 452 Pa. at 567, 307 A.2d at 263. The Commonwealth argues that valid reasons exist to support the trial court's discretionary ruling and therefore Superior Court erred in substituting its judgment based on its own analysis of the *Bighum/Roots* factors. I disagree. Although the trial court acknowledged the factors to be considered and listed pertinent facts, it does not appear to have undertaken a "meaningful exercise of discretion" in balancing the need for the evidence against the potential for prejudice.

As to the nature of the offense, the court reasoned that because it was a property offense it did not carry the potential to suggest that the defendant was disposed to commit a crime of violence against the person and therefore was not prejudicial. The court failed, however, to independently consider "the degree to which the prior offense reflects upon the veracity of the witness," apart from noting cases in which burglary had been considered a crime involving dishonesty.[7]

The most important factor for the court appears to have been its determination that credibility was crucial to the case. In striking the balance on the need for the disputed evidence the court ignored the entirety of the Commonwealth's case in chief and considered only the single rebuttal witness available to the Commonwealth to counter the defendant's claim that the victim had a gun at the club that day. To my mind this was error. In assessing the needs of the parties for or against the admission of evidence, the entire case must be considered as a whole. The Commonwealth had presented two eyewitnesses and other investigators, the sum of whose testimony stood in direct contradiction to the defense offered. The appellee, on the other hand, had no means of establishing his claim of self-defense other than his own testimony. The effect of the court's ruling was to taint the only defense evidence with potentially prejudicial collateral information, while a contrary ruling would have removed nothing from the substance of the Commonwealth's case. Although it might be argued that the prior offense impeachment evidence was necessary to aid the jury in assessing the conflicting evidence, under the applicable law and on this record, such a conclusion can only follow if the Commonwealth's need is given undue weight.

7. *Amicus curiae* Defender Association of Philadelphia advances the argument that burglary is not in all circumstances a crime involving dishonesty or false statement and should not be admissible to impeach credibility without specific evidence that the offense was committed by fraudulent or deceitful means. As noted, this issue is pending before the Court in *Commonwealth v. Mullen*, No. 52 M.D. Appeal Docket 1985, argued May 15, 1986, and need not be addressed in this case, where it is not in proper posture to be decided.

428

It is notable that the Commonwealth was, of course, free to argue that the jury should be suspect of the defendant's testimony in light of his self-interest and considering the volume of the evidence to the contrary. Any "need" to bolster this argument by alerting the jury to a six year old burglary conviction shrinks to obscurity when it is seen that to avoid having this conviction put in evidence the defendant would have had to refrain from testifying and thereby offer no defense.

For these reasons I would affirm the Order of the Superior Court.

NIX, C.J., joined in this dissenting opinion.